Alejandro N. Mayorkas (SBN 122447)
alejandro.mayorkas@wilmerhale.com
Matthew D. Benedetto (SBN 252379)
matthew.benedetto@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
(213) 443-5300 Telephone
(213) 443-5400 Facsimile

David M. Lehn (*pro hac vice*)
david.lehn@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000 Telephone
(202) 663-6363 Facsimile

*Attorneys for Respondent*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   *Petitioner*,<br><br>  v.<br><br>FRANK AGRAMA,<br><br>   *Respondent*. | Case No. 2:19-cv-09204 DDP(JCx)<br><br>**OPPOSITION TO GOVERNMENT'S *EX PARTE* APPLICATION FOR LEAVE TO SUBMIT DECLARATION AND MEMORANDUM *IN CAMERA*** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... ii

BACKGROUND ....................................................................................................... 1

ARGUMENT ............................................................................................................. 4

I. The Court Cannot Enforce the IRS's Summons Based on Its *in Camera* Consideration of the Government's Secret Declaration and Brief ........... 4

II. The Government Has Not Shown That *ex Parte*, *in Camera Review* Is Warranted .................................................................................................. 9

III. *In Camera* Adjudication of the Enforcement Petition Would Be an Abuse of Discretion ................................................................................ 11

CONCLUSION ........................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Abourezk v. Reagan*,
    785 F.2d 1043 (D.C. Cir. 1986) .................................................................. 5, 9

*Afro-Lecon, Inc. v. United States*,
    820 F.2d 1198 (Fed. Cir. 1987) ........................................................................ 7

*Agrama v. IRS,*
    No. 17-5256, 2019 WL 2067719 (D.C. Cir. Apr. 19, 2019) ........................ 10

*Al Otro Lado, Inc. v. Wolf*,
    No. 17-2366, 2020 WL 3487823 (S.D. Cal. June 26, 2020) .................... 9, 11

*Al-Haramain Islamic Foundation, Inc. v. Bush*,
    507 F.3d 1190 (9th Cir. 2007) ......................................................................... 5

*Bareford v. General* Dynamics *Corp.*,
    973 F.2d 1138 (5th Cir. 1992) ......................................................................... 7

*Bittaker v. Woodford*,
    331 F.3d 715 (9th Cir. 2003) ........................................................................... 6

*Conkling v. Turner*,
    883 F.2d 431 (5th Cir. 1989) ........................................................................... 6

*Gilmore v. Palestinian Interim Self-Government Authority*,
    843 F.3d 958 (D.C. Cir. 2016) ......................................................................... 5

*Greater Newburyport Clamshell Alliance v. Public Service Co.*,
    838 F.2d 13 (1st Cir. 1988) .............................................................................. 6

*Guenther v. Commissioner*,
    889 F.2d 882 (9th Cir. 1989) ........................................................................... 5

*Ideal Electronic Security Co. v. International Fidelity Insurance Co.*,
    129 F.3d 143 (D.C. Cir. 1997) ......................................................................... 6

*In re The City of New York,*
    607 F.3d 923 (2d Cir. 2010) .......................................................................... 10

*In re Sealed Case*,
   494 F.3d 139 (D.C. Cir. 2007) .......................................................................... 7

*In re Sealed Case*,
   856 F.2d 268 (D.C. Cir. 1988) ........................................................................ 10

*In re Sealed Case*,
   121 F.3d 729 (D.C. Cir. 1997) ........................................................................ 11

*Labow v. DOJ*,
   831 F.3d 523 (D.C. Cir. 2016) ........................................................................ 11

*Landry v. FDIC*,
   204 F.3d 1125 (D.C. Cir. 2000) ........................................................................ 9

*Lyons v. Johnson*,
   415 F.2d 540 (9th Cir. 1969) ............................................................................ 7

*Mohamed v. Jeppesen Dataplan, Inc.*,
   614 F.3d 1070 (9th Cir. 2010) .......................................................................... 7

*Phillippi v. CIA*,
   546 F.2d 1009 (D.C. Cir. 1976) ................................................................. 9, 11

*Serafino v. Hasbro, Inc.*,
   82 F.3d 515 (1st Cir. 1996) ............................................................................... 7

*Tenenbaum v. Simonini*,
   372 F.3d 776 (6th Cir. 2004) ............................................................................ 7

*United States v. Benoit*,
   276 F. App'x 639 (9th Cir. 2008) ................................................................... 11

*United States v. Clarke*,
   573 U.S. 248 (2014) ............................................................................... 2, 3, 12

*United States v. Powell*,
   379 U.S. 48 (1964) ............................................................................................ 2

*United States v. Stuart*,
   489 U.S. 353 (1989) .......................................................................................... 2

*United States v. Weber Aircraft Corp.*,
   465 U.S. 792 (1984) ........................................................................................ 10

*Wehling v. Columbia Broadcasting System*,
   608 F.2d 1084 (5th Cir. 1979) ......................................................................... 7

*Whitaker-Merrell Co. v. Profit Counselors, Inc.*,
   748 F.2d 354 (6th Cir. 1984) .......................................................................... 5

**STATUTORY PROVISIONS**

5 U.S.C. § 552 ................................................................................................ 10

The Internal Revenue Service petitioned the Court to enforce the IRS's document summons against Frank Agrama. Mr. Agrama opposed the petition and, in the alternative, requested an evidentiary hearing to determine whether the summons should be enforced given the serious questions he raised about the lawfulness and good faith of the IRS's process. In response, the IRS now asks the Court—through a highly unusual *ex parte* application—for leave to submit a declaration and accompanying memorandum *in camera* in an effort to address Mr. Agrama's factual showing in opposition to the summons and in support of his alternative request for an evidentiary hearing.

There would be no need for the IRS to submit a declaration (and its accompanying memorandum) if the IRS thought that Mr. Agrama had not met the requisite threshold for an evidentiary hearing. By seeking to introduce the declaration and accompanying memorandum *in camera*, the IRS attempts to conduct that evidentiary hearing in secret and introduce its purported evidence without challenge. The law does not permit such a secret and unjust process that would be so contrary to the core principles of our adversary system. The government's *ex parte* request should be denied.[1]

## BACKGROUND

Most of the relevant background for this dispute may be found in Mr. Agrama's combined response to the Court's order to show cause and memorandum in support of his motion for an evidentiary hearing. Resp. to

---

[1] That the government made this request through a last-minute *ex parte* application (Mr. Agrama's counsel was notified only the day before it was filed) was unwarranted. Although the government may have availed itself of the *ex parte* process to ensure that its request would be resolved before the hearing on Mr. Agrama's motion for an evidentiary hearing (which is noticed for August 31, 2020), the parties have to date worked cooperatively to find mutually agreeable briefing schedules. Had the government given Mr. Agrama's counsel the opportunity, they would have accommodated an expedited briefing schedule on a motion to submit materials *in camera*.

Order to Show Cause and Mem. in Supp. of Mot. for Evidentiary Hr'g ("Agrama Opp."), ECF No. 18-1.  As pertinent here, the IRS issued a summons to Mr. Agrama for all documents relating to two Italian proceedings involving Mr. Agrama, all documents relating to an Irish lawsuit brought by Mr. Agrama challenging a request for legal assistance by the Italian prosecutor, and all documents provided to the Italian government from other countries.  Declaration of James Pack ("Pack Decl.") (Oct. 24, 2019), ECF No. 1-2, Ex. A ("Summons Attachment") at 1, ECF No. 1-3.  In response to the summons, Mr. Agrama produced documents he had filed in the Italian and Irish proceedings. Declaration of Roberto Pisano ¶ 19 (June 18, 2020), ECF No. 18-11.  Mr. Agrama, however, did not produce documents obtained by the Italian prosecution team from foreign jurisdictions pursuant to Mutual Legal Assistance Treaties ("MLAT Documents").

Seeking the MLAT Documents from Mr. Agrama, the government petitioned the Court to enforce the summons.  In opposition to the government's petition, Mr. Agrama argued that the IRS was not entitled to enforcement under the *Powell* test for several reasons[2]:

- The summons seeks documents already possessed by the IRS, Agrama Opp. 12-14;

---

[2] An IRS summons may be enforced only if the government establishes "what have become known as the *Powell* factors: '[1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the IRS's possession, and [4] that the administrative steps required by the Internal Revenue Code have been followed.'" *United States v. Clarke*, 573 U.S. 248, 250 (2014) (quotation cleaned) (quoting *United States v. Powell*, 379 U.S. 48, 57-58 (1964)).  A summons should be quashed, however, if the taxpayer rebuts the IRS's prima facie case or otherwise shows the summons to be in bad faith or an "attempt[] to abuse the court's process." *United States v. Stuart*, 489 U.S. 353, 360 (1989).  *See generally* Agrama Opp. 10-11.

- The summons seeks to circumvent the disclosure prohibitions in the MLATs under which the MLAT Documents were provided, *id*. 14-19;

- The IRS investigation for which the summons was issued is founded on documents that the IRS obtained in violation of the Constitution, *id*. 21; and,

- The IRS investigation is founded on documents that may have been obtained in violation of the United States-Italy Tax Treaty, *id*. 21-23.

In the alternative, Mr. Agrama requested an evidentiary hearing to probe various issues relating to the legitimacy of the IRS's summons. *See* Agrama Opp. 4.[3]  Those issues include:

- the extent to which the IRS already possesses the summoned documents;

- the extent to which the current focus of the IRS investigation is based on documents or information reviewed by the Italian prosecution team during the illegal searches of Mr. Agrama's home and business in California;

- the procedure by which the IRS obtained documents from the Italian prosecution team or other Italian governmental officials; and

- the extent to which the current focus of the investigation is based on documents the IRS received directly or indirectly from the Italian government or the Italian prosecution team.

In conjunction with its reply in support of its enforcement petition and opposition to Mr. Agrama's request for an evidentiary hearing, the government submitted an *ex parte* application for leave to submit a declaration and memorandum *in camera*.  Ex Parte App. for Leave to Submit Decl. and Mem. In Camera ("*Ex Parte* App."), ECF No. 23.  In its application, the government explained that the secret declaration and brief would "contain confidential and privileged information concerning the IRS's active, ongoing examination of the federal income tax liability of Frank and Olfet Agrama for the tax years 1997

---

[3] "[T]he taxpayer is entitled to examine an IRS agent [at a hearing] when [the taxpayer] can point to specific facts or circumstances plausibly raising an inference of bad faith." *Clarke*, 573 U.S. at 254. *See generally* Agrama Opp. 11-12.

through 2009, and 2011." *Ex Parte* App. 1-2. The government stated that this information "relate[s] to the ongoing IRS examination of the Agramas and how [the IRS] came into possession of copies of certain summoned documents." *Id.* at 2. The government cited these secret documents in its reply brief to support its assertion that "[t]he IRS does not have in its possession copies of all the summoned documents and the copies of the documents in the IRS's possession were not unlawfully obtained." Reply in Supp. of Pet. to Enforce IRS Summons and Resp. to Mot. for Evidentiary Hr'g 6 ("IRS Reply), ECF No. 22; *see also id.* at 23. But the government's secret declaration and brief may well speak to other material issues before the Court. According to the government, "filing this information in the public record could impair the IRS's examination because disclosure of such information would reveal the scope, direction, strategy, and potential limitations of the examination." *Ex Parte* App. 2.

## ARGUMENT

I. **THE COURT CANNOT ENFORCE THE IRS'S SUMMONS BASED ON ITS *IN CAMERA* CONSIDERATION OF THE GOVERNMENT'S SECRET DECLARATION AND BRIEF**

The government has styled its request as an application to submit a declaration and memorandum *in camera*, but what the government is really requesting is *ex parte* adjudication of the merits of its petition to enforce the summons. That request is completely inappropriate. As the party invoking the Court's power to grant relief, the government would ordinarily have to make the difficult choice to either share the secret documents with Mr. Agrama or proceed without them. But where, as here, the secret documents appear to contain information that is essential to Mr. Agrama's ability to defend against the summons, if the government chooses to withhold them from Mr. Agrama, the government's petition to enforce the summons must be denied.

A.  "It is a hallmark of our adversary system that we safeguard party access to the evidence tendered in support of a requested court judgment. The openness of judicial proceedings serves to preserve both the appearance and the reality of fairness in the adjudications of United States courts." *Abourezk v. Reagan*, 785 F.2d 1043, 1060-1061 (D.C. Cir. 1986) (Ginsburg, R.B., J.), *aff'd by an equally divided Court*, 484 U.S. 1 (1987). "The process of *in camera* review ineluctably places the court in a role that runs contrary to our fundamental principle of a transparent judicial system." *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007).

Accordingly, the circumstances in which *ex parte*, *in camera* proceedings are permitted "are both few and tightly contained." *Abourezk*, 785 F.2d at 1061. Courts have generally identified three (none of which exists here): (1) to "inspect the evidence *in camera* and alone for the limited purpose of determining whether [an] asserted privilege is genuinely applicable," *id.*; (2) where "specified by statute," the "prime current example" of which is the Freedom of Information Act ("FOIA"), *id.*; and (3) "to resolve fears of intimidation of a witness," *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 967 (D.C. Cir. 2016).

But "the firmly held main rule [is] that a court may not dispose of the merits of a case on the basis of ex parte, in camera submissions." *Abourezk*, 785 F.2d at 1060-1061. Again, "it is inconsistent with our adversary system for parties to submit and judges to accept *ex parte* trial briefs." *Whitaker-Merrell Co. v. Profit Counselors, Inc.*, 748 F.2d 354, 359 (6th Cir. 1984); *see Guenther v. Commissioner*, 889 F.2d 882, 884 (9th Cir. 1989) ("We are disturbed greatly that taxpayers did not have a chance to address the allegations made in the Commissioner's *ex parte* memorandum [to the Tax Court] until long after the trial concluded. … This is a fraud case and the *ex parte* memorandum allegedly impugned the character of the taxpayers prior to trial."). Thus, courts recognize

1   as a general principle that if a litigant calls upon the courts for affirmative relief,
2   it may not assert a protection to withhold evidence that is essential to the
3   opposing side's defense.  Privilege, in short, is a shield, not a sword.
4          To that end, courts regularly hold that "parties in litigation may not abuse
5   [a] privilege by asserting claims the opposing party cannot adequately dispute
6   unless it has access to the privileged materials.  The party asserting the claim is
7   said to have implicitly waived the privilege." *Bittaker v. Woodford*, 331 F.3d
8   715, 719 (9th Cir. 2003); *see also, e.g.*, *Conkling v. Turner*, 883 F.2d 431, 434-
9   435 (5th Cir. 1989) ("The great weight of authority holds that the attorney-client
10  privilege is waived when a litigant places information protected by it in issue
11  through some affirmative act for his own benefit, and to allow the privilege to
12  protect against disclosure of such information would be manifestly unfair to the
13  opposing party." (quotation cleaned)); *Greater Newburyport Clamshell All. v.
14  Public Serv. Co.*, 838 F.2d 13, 20 (1st Cir. 1988); *Ideal Elec. Sec. Co. v.
15  International Fid. Ins. Co.*, 129 F.3d 143, 151 (D.C. Cir. 1997).  "The court thus
16  gives the holder of the privilege a choice: If you want to litigate this claim, then
17  you must waive your privilege to the extent necessary to give your opponent a
18  fair opportunity to defend against it." *Bittaker*, 331 F.3d at 720; *see also Greater
19  Newburyport*, 838 F.2d at 21.
20         And when the privilege has special status such that it might be
21  inappropriate for a court to deem it waived—particularly the Fifth Amendment
22  privilege against self-incrimination and the state secrets doctrine—courts may
23  use *ex parte*, *in camera* inspection to determine whether the protection applies,
24  but they must then evaluate the claim and defense without the protected
25  evidence, and if the "privilege deprives the defendant of information that would
26  otherwise give the defendant a valid defense to the claim, then the court may
27  grant … judgment to the defendant." *Mohamed v. Jeppesen Dataplan, Inc.*, 614
28  F.3d 1070, 1083 (9th Cir. 2010) (en banc) (quotation cleaned) (citing *Bareford v.*

*General Dynamics Corp.*, 973 F.2d 1138, 1141 (5th Cir. 1992), *In re Sealed Case*, 494 F.3d 139, 153 (D.C. Cir. 2007), and *Tenenbaum v. Simonini*, 372 F.3d 776, 777 (6th Cir. 2004)); *see also, e.g.*, *Lyons v. Johnson*, 415 F.2d 540, 542 (9th Cir. 1969) (where plaintiff asserts Fifth Amendment privilege to block discovery, any "prejudice … must, as a matter of basic fairness in the purposes and concepts on which the right of litigation rests, be to the party asserting the claim and not to the one who has been subjected to its assertion").[4]

      Consistent with these principles, although there is an established practice of courts using *in camera* review to evaluate assertions of privilege in the context of an IRS summons (i.e., for inspection), there is no established practice of courts using *in camera* review to evaluate the *merits* of an IRS petition to enforce a summons or the *merits* of a taxpayer's effort to quash an IRS summons.

      B.    Accordingly, this Court cannot enforce the IRS summons against Mr. Agrama based on *ex parte*, *in camera* review of the government's secret declaration and brief. Even if it is appropriate for the Court to inspect the government's secret declaration and brief to determine whether they contain protected information, the government's request that the Court evaluate the validity of the summons based on the secret declaration and memorandum is wholly inappropriate. The government is the legal aggressor here—it issued the summons and it has invoked this Court's jurisdiction to enforce that summons. Therefore, the government must share with Mr. Agrama any information it

---

[4] *See also Serafino v. Hasbro, Inc.*, 82 F.3d 515, 518-519 (1st Cir. 1996) (dismissing case where plaintiffs' Fifth Amendment privilege covered evidence that was "central to defendant's defense"); *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1087-1088 (5th Cir. 1979) (Where plaintiff's assertion of Fifth Amendment privilege would "deprive [defendant] of information needed to prepare its … defense," dismissal is appropriate (absent other available remedy); a "civil plaintiff has no absolute right to both his silence and his lawsuit."); *Afro-Lecon, Inc. v. United States*, 820 F.2d 1198, 1205 (Fed. Cir. 1987) ("a party may not claim a fifth amendment privilege and *proceed* with his suit").

1 wishes the Court to consider in deciding whether to enforce the summons (under
2 seal if needed).  If the government refuses to do so, and if the secret information
3 is essential to Mr. Agrama's ability to challenge enforcement of the summons,
4 the Court must deny the petition to enforce.  The government cannot have it both
5 ways.  It cannot seek to enforce its summons and, when opposing facts are
6 presented that at the very least justify an evidentiary hearing, acknowledge that
7 but seek to present its own evidence *in camera* and without challenge, thereby
8 circumventing the very hearing that the law provides.  The government's action
9 contravenes the core underpinnings of our adversarial system.  The Court may
10 not grant the petition based on secret information that Mr. Agrama has had no
11 opportunity to review and rebut.

12        Indeed, it is clear from the public filings that, without the secret
13 information, the government is not entitled to enforcement of the summons.  Mr.
14 Agrama's opposition rebutted on several grounds the government's claim that it
15 is entitled to enforcement and showed that the summons should be quashed, or
16 that, at a minimum, there should be an evidentiary hearing.  *Supra* pp.2-3.  The
17 government implicitly acknowledges that by submitting the secret declaration
18 and brief to address core issues regarding the validity of its summons, such as
19 what summoned documents it already possesses and how it acquired them.  *See*
20 IRS Reply 6, 23.  If Mr. Agrama had not made a sufficient showing to defeat
21 enforcement, the government would not have needed to submit the secret
22 declaration and brief to rehabilitate its enforcement petition.

23        The government notes that a "similar declaration was submitted for *in*
24 *camera* review in Mr. Agrama's FOIA litigation." *Ex parte* App. 2.  That does
25 not help the government here.  The use of *in camera* review to determine
26 whether records are covered by a FOIA exemption does not undermine the
27 fairness of FOIA litigation because the party asserting the protection and
28 requesting *in camera* review is the *defendant* to the action (the government), not

the party invoking the power of the court for relief.  Moreover, in a FOIA action, inspection merges with the merits of the suit:  The ultimate merits question in a FOIA case is whether the records at issue are covered by a statutorily defined exemption.  If the government had to disclose the records over which it claims a FOIA exemption in order to withhold them under that exemption, the statutory exemptions would be null and the statutory scheme would be absurd.  That is why courts have recognized that FOIA actions present an exception to the main rule that a court may not determine the merits of a case through *ex parte*, *in camera* submissions.  *Abourezk*, 785 F.2d at 1060-1061.

## II. THE GOVERNMENT HAS NOT SHOWN THAT *EX PARTE, IN CAMERA* REVIEW IS WARRANTED

Even if it were proper for the Court to evaluate the merits of the government's petition based on *ex parte*, *in camera* review of the government's secret declaration and brief, the government could obtain *in camera* review only by providing a "detailed *public* justification" for it.  *Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976) (emphasis added).  The government has failed to do so and therefore *in camera* review is unwarranted.

The government provides no support for its assertion that the documents at issue "contain confidential and privileged information." *Ex parte* App. 2. Because this is not a FOIA action, the government must provide "(1) a formal claim of privilege by the 'head of the department' having control over the requested information; (2) assertion of the privilege based on actual personal consideration by that official; and (3) a detailed specification of the information for which the privilege is claimed, with an explanation why it properly falls within the scope of the privilege." *Landry v. FDIC*, 204 F.3d 1125, 1135 (D.C. Cir. 2000); *see also, e.g.*, *Al Otro Lado, Inc. v. Wolf*, No. 17-2366, 2020 WL 3487823, at *2 (S.D. Cal. June 26, 2020).  The government has provided none of these.  It has not even identified the privilege it believes applies.

Whether the information that the government seeks to submit for *in camera* review here is privileged is not necessarily resolved by the D.C. Circuit's conclusion that the records Mr. Agrama previously requested under FOIA were withholdable under FOIA Exemption 7(A), *Agrama v. IRS*, No. 17-5256, 2019 WL 2067719, at *2 (D.C. Cir. Apr. 19, 2019), which applies to "law enforcement" records in certain limited circumstances, 5 U.S.C. § 552(b)(7)(A). The government has not said whether the same records are at issue; it has said only that a "similar declaration" was submitted in the FOIA lawsuit. (Of course, to the extent the same records are at issue, that confirms that the summons is improper because the IRS already possesses the summoned documents.) And even to the extent that the same records are at issue, it cannot be assumed that they are privileged here because, unlike FOIA Exemption 5, which "simply incorporates civil discovery privileges," *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799 (1984), FOIA Exemption 7(A) does not necessarily correspond to a litigation privilege and even if it is true that disclosure of the government's secret declaration and brief would "reveal the scope, direction, strategy, and potential limitations of the examination," *Ex Parte* App. 2, such information is not necessarily covered by the law-enforcement privilege, *see In re The City of N.Y.*, 607 F.3d 923, 948 (2d Cir. 2010) (enumerating types of information protected by law-enforcement privilege).

Instead, the government's *ex parte* application merely relies on sweeping and conclusory assertions. The government provides no detail regarding how disclosure "would reveal the scope, direction, strategy, and potential limitations of the examination," let alone how it "could impair the IRS's examination." *Ex Parte* App. 2. The government's application thus improperly deprives Mr. Agrama of his right to show that *in camera* review is unnecessary or that any asserted privilege should be lifted. *See, e.g.*, *City of N.Y.*, 607 F.3d at 945 (noting "the law enforcement privilege is qualified, not absolute," and describing

test for overcoming it); *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988) ("the law enforcement investigatory privilege is qualified"); *Al Otro Lado*, 2020 WL 3487823, at *2-3; *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (per curiam) ("The deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need").  More importantly, the government's application improperly deprives Mr. Agrama of any meaningful opportunity to respond to the government's arguments regarding the validity of its summons.  *See Phillippi*, 546 F.2d at 1013-1014; *United States v. Benoit*, 276 F. App'x 639, 640 (9th Cir. 2008) ("due process" assures taxpayer "right[]" to "notice and a meaningful opportunity to respond to the petition" to enforce IRS summons).

In any event, it is difficult to imagine how many of the issues addressed in the secret declaration and brief—particularly what documents the IRS already possesses and how it acquired them—could possibly reveal sensitive information regarding the IRS examination's scope, direction, or strategy.  Especially at this juncture—in year 7 of the IRS's examination.

### III.   *IN CAMERA* ADJUDICATION OF THE ENFORCEMENT PETITION WOULD BE AN ABUSE OF DISCRETION

It would be an abuse of discretion for the Court to resolve the merits of the government's enforcement petition based on *ex parte*, *in camera* review of the government's declaration and brief because that would contravene the framework for testing the validity of an IRS summons established in *Powell* and *Clarke* and because the government has shown itself not to be sufficiently reliable.  *See Labow v. DOJ*, 831 F.3d 523, 533 (D.C. Cir. 2016) ("We review the district court's decision to review evidence ex parte for abuse of discretion.").

Through his opposition to the government's petition, Mr. Agrama has sufficiently shown that the government is not entitled to enforcement under *Powell*, or that, at a minimum, there should be an evidentiary hearing at which

Mr. Agrama may "examine [the] IRS agent" about the basis of the summons and other material issues, *Clarke*, 573 U.S. at 254; *see supra* pp.2-3.  The government's submission of its secret declaration and brief is a ploy to deny Mr. Agrama that hearing on the basis of the government's one-sided narrative about its investigation.  If the government can take advantage of *in camera* review to obtain enforcement of an IRS summons here, it will likely be able to do so in many other instances where the taxpayer has raised plausible objections to summons enforcement, rendering the *Powell* standard and the opportunity for a hearing afforded by *Clarke* of little, if any, practical value to taxpayers.

Moreover, in this case the government has by now lost the trust that is essential for judicial reliance on *ex parte* evidence and arguments.  For example, in its response to Mr. Agrama's motion for the return of property, the government represented to the Court that its searches of Mr. Agrama's home and office in Los Angeles had adhered to the "taint" procedures and that the Italian prosecution team was "not allowed to see any" privileged materials during those searches.  Gov't Opp. to Mot. to Return Prop.  11, 13, 25, 31, 33, No. 06-7663, ECF No. 18.  Those representations were false, as the government eventually admitted.  *See* Gov's Notice re Its Resp. to Mot. for Return of Prop. 1-2, No. 06-7663, ECF No. 24; Agrama Opp. 5-6.  Not only that, but the government initially stood by its false representations even after Mr. Agrama alerted the government to the truth.  *See* Mot. for Return of Unlawfully Seized Prop. 8-9, No. 06-7663, ECF No. 1.  The government insists that the Justice Department's earlier misconduct should not be ascribed to the IRS here, but the IRS has also made false representations to the Court regarding its investigation of Mr. Agrama and the summons at issue.  The IRS represented to the Court that the materials it "demanded in the summons are not already in the possession of the IRS," Pack Decl. ¶ 9, which was false, Agrama Opp. 12-13, as the government concedes; it has many of the documents demanded in the summons, IRS Reply 5-6, 17-18.

Further, the IRS falsely stated, among other things, that Mr. Agrama's attorney said that Mr. Agrama's "funds held at UBS were frozen," Pack Decl. ¶ 18.  The IRS continues to "stand[] by" that false statement, IRS Reply 24, even though Mr. Agrama showed it to be not only false but outside the IRS declarant's knowledge, Agrama Opp. 24.

Under these circumstances, it would be inappropriate for the Court to rely on the government's secret submissions to determine that the summons should be enforced.

## CONCLUSION

For the foregoing reasons, the government's *ex parte* application should be denied.

Dated:  July 23, 2020        WILMER CUTLER PICKERING HALE & DORR LLP

By:   /s/ Alejandro N. Mayorkas
      Alejandro N. Mayorkas (SBN: 122447)
      *Attorney for Respondent*